IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


EDGAR ESPINAL,

    Plaintiff,

vs.                                 Case No.: 4:13cv116-RH/CAS

D. YOUNG, J. HODGE,
OFFICER RIVERA, and
SERGEANT BRITT,

    Defendants.
_____/


## REPORT AND RECOMMENDATION

Plaintiff Edgar Espinal initiated this case in March of 2013. Docs. 1-2. Subsequently, Mr. Espinal filed a fourth amended complaint, doc. 26, alleging that Sergeant Britt, and Officers Young, Hodge, and Rivera, placed another inmate in Mr. Espinal's cell although there was a "restriction of no contact" which had been issued directing that Mr. Espinal and inmate Hugo Mosqueda[1] remain separated because of a prior fight. When Mr. Espinal advised the officers that inmate Mosqueda was threatening to kill Mr. Espinal, they "made fun" of Mr. Espinal and did not separate them. Doc. 26 at 6. On December 31, 2012, inmate Mosqueda attacked Mr. Espinal.

---

[1] This inmate's surname is not spelled consistently throughout the relevant pleadings. However, review of the Department of Corrections' website reveals the correct spelling is Mosqueda, and will be used in this Report and Recommendation rather than Masgudo or Masqueda as used in some pleadings.

*Id.* at 6-7.  Mr. Espinal contends the attack was prolonged because Sergeant Britt had abandoned his post.  *Id.* at 7.

Sergeant Britt and Officers Hodge and Young filed an answer on June 26, 2014. Doc. 50.  Officer Rivera filed an answer on July 28, 2014.  Doc. 58.  Discovery was directed, doc. 53, and Mr. Espinal's motion, doc. 60, requesting the appointment of counsel was granted, doc. 61.  An announcement was published on the Court's website seeking the assistance of counsel for Mr. Espinal, *id.*, but a notice of appearance has never been filed.

After the conclusion of discovery, Mr. Espinal filed a four-page motion for summary judgment.  Doc. 73.  Two days later, he filed a motion requesting leave to supplement the summary judgment motion, stating he forget to submit several pages of supporting exhibits.  Doc. 74.  That motion was denied because of several deficiencies, *see* doc. 77, but Mr. Espinal was permitted to submit an "amended motion for summary judgment in which he simultaneously submits any relevant exhibits, cites to those exhibits within the motion, and provides a statement of undisputed material facts."  Doc. 77 at 2.

Defendants also filed a motion for summary judgment, doc. 75, and Mr. Espinal was provided guidance in filing his opposition pursuant to Rule 56 and N.D. Fla. Loc. R. 56.1.  Doc. 77.  After several extensions of time, Mr. Espinal filed his response in opposition to Defendants' summary judgment motion on August 17, 2015.  Doc. 94.  Mr. Espinal did not file an amended motion for summary judgment.

Because Mr. Espinal's original motion for summary judgment, doc. 73, is not supported by a statement of undisputed facts, it is insufficient under Rule 56 and Local

Rule 56.1. Mr. Espinal's motion, doc. 73, should be denied because it does not show there is no genuine dispute as to any material fact as required by Rule 56(a).

## I. Legal standards governing a motion for summary judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Thus, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323, 106 S. Ct. at 2553. The non-moving party must then show[2] the court "that there is an absence of evidence to support the nonmoving party's case." Id. at 325, 106 S. Ct. at 2554.

---

[2] "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), cert. denied, 522 U.S. 1126 (1998) (quoting Celotex, 477 U.S. at 324, 106 S. Ct. at 2553) (quoting Fed. R. Civ. P. 56(c), (e))). The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c). Owen, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted). A party must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Elec. Indus. Co., LTD. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient. The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Hickson Corp., 357 F.3d at 1260 (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986)). All reasonable inferences must be resolved in the light most favorable to the nonmoving party, Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999), if there is a genuine dispute as to those facts. Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (cited in Ricci v. DeStefano, 129 S.Ct. 2658, 2677 (2009)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., 475 U.S. at 587 (internal quotation marks omitted) (quoted in Ricci v. DeStefano, 129 S.Ct. at 2677).

## II. Exhaustion

Prior to setting forth the relevant evidence, the issue of exhaustion must be addressed. Defendants Young, Hodge, and Britt asserted in their Answer that they were "without knowledge as to whether Plaintiff exhausted his administrative remedies, and therefore" denied that Mr. Espinal exhausted the grievance process. Doc. 50 at 1.

The exhaustion defense was also raised as an affirmative defense. *Id.* at 3-4. Defendant Rivera also raised exhaustion as an affirmative defense. *Id.* at 1, 3.

The motion for summary judgment asserts that Mr. Espinal did not exhaust administrative remedies as to his claim that Defendants failed to protect him. Doc. 75 at 11-12. It is argued that appeal log 13-6-01646 and 13-6-2512 presents the general facts concerning the assault by inmate Mosqueda, and contends the officers were negligent, but does not notify prison officials of the basis for the claim raised in this case - that his Eighth Amendment rights were violated because he was not protected from assault by another inmate. *Id.*

Mr. Espinal argues that he filed a grievance on November 20, 2012, advising that his life was in danger. Doc. 95 at 3. He advises that no action was taken on his behalf and he was never moved out of the cell. *Id.* Additionally, Mr. Espinal claims that he exhausted administrative remedies but his grievance "at the institution level was intercepted by the officials of the institution . . . ." *Id.* Mr. Espinal directs attention to the grievances submitted with the Defendants' motion for summary judgment. These grievances have been reviewed.

In grievance log 13-6-02512, Mr. Espinal stated he was grieving the gross negligence of the administration and specifically, the institution's classification "or a violation of FAC ch. 33-602.222(8)(2)[3] . . . ." Doc. 75-5 at 8. Mr. Espinal complained that he should not have still been in confinement but should have been released to open population. *Id.* He complained that he should not have been housed with a " 'DC' status inmate" and the housing assignment put him at "great risk." *Id.* Mr. Espinal

---

[3] Judicial notice is taken that there is no Rule 33-602.222.

detailed the events of the assault and complained of the officers' slow reactions in providing him assistance. *Id.* at 9. Mr. Espinal asserted that the attack was "the fault of the classification team" and he requested immediate action. *Id.* The response to that grievance appeal advised Mr. Espinal that "[t]he subject of [his] grievance [was] currently being reviewed by the investigative section of the Office of the Inspector General." Ex. E-2 (doc. 75-5 at 7). Mr. Espinal was informed that because that "process was initiated prior to the receipt of [his] grievance, [his] request for action" was denied. *Id.*

A similar grievance appeal was filed as log number 13-6-01646. Doc. 75-5 at 2-3. That appeal provided the same assertions and facts. *Id.* The response to that appeal also advised that the "issue" of Mr. Espinal's complaint had been referred to the Inspector General's office. *Id.* at 1. However, this time, the concluding response was: "As action has been initiated, you may consider your appeal approved from that standpoint." *Id.*

When the Prison Litigation Reform Act was enacted, Congress mandated that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement of § 1997e(a) is mandatory, Alexander v. Hawk, 159 F.3d 1321, 1324-26 (11th Cir. 1998), but is not jurisdictional. Bryant v. Rich, 530 F.3d 1368, 1374 n.10 (11th Cir.), *cert. denied*, 129 S.Ct. 733 (2008) (citing Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2392, 165 L.Ed.2d 368 (2006)). There is no discretion to waive this requirement or provide continuances of prisoner

litigation in the event that a claim has not been exhausted prior to filing. Alexander, 159 F.3d at 1325; *see also* Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (holding that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."); Brown v. Sikes, 212 F.3d 1205, 1207-08 (11th Cir. 2000) (finding that an inmate must "provide with his grievance all relevant information reasonably available to him" but he cannot be required to name individuals responsible for challenged conduct when he could not yet identify those persons). The Court may not consider the adequacy or futility of administrative remedies, but only the availability of such. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (citing Alexander, 159 F.3d at 1323). Even where an inmate seeks only monetary damages in a civil rights case, he must complete the prison administrative process if it could provide some sort of relief on the complaint although no money could be given administratively. Booth v. Churner, 531 U.S. 956, 121 S. Ct. 1819, 1821, 149 L. Ed. 2d 958 (2001). "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." Jones v. Bock, 549 U.S. 199, 204-209, 127 S.Ct. 910, 914, 166 L.Ed.2d 798 (2007).[4]

    A prisoner must also comply with the process set forth and established by the grievance procedures. *See* Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999). In

---

[4] The Court further rejected the view of the Sixth Circuit when it concluded that "nothing in the statute [§ 1997e(a)] imposes a 'name all defendants' requirement." Jones v. Bock, 549 U.S. at 217-219, 127 S.Ct. at 922-923 (concluding "that exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances.").

other words, not only must a prisoner exhaust a claim under § 1997e(a), the "PLRA exhaustion requirement requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93, 126 S.Ct. 2378, 2387 (2006) (concluding that "proper exhaustion" means complying with the specific prison grievance requirements, not judicially imposed requirements).

Defendants "bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (relying on Jones v. Bock, 549 U.S. 199, 127 S.Ct. at 910, 921, 166 L.Ed.2d 798 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints.")). Factual disputes concerning the exhaustion of administrative remedies may be decided by the court sitting as fact-finder, "so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1373-74, 1376. Even though evidence may be presented to support or refute a contention that a prisoner has not exhausted the grievance process, exhaustion is a "matter in abatement and not generally an adjudication on the merits," thus, it should be raised and treated as a motion to dismiss, not a summary judgment motion. *Id.*, at 1374-75.

Although Defendants did not properly submit this defense in a motion to dismiss, Mr. Espinal has had an opportunity to develop a record to show he has exhausted available remedies. There is no dispute that Mr. Espinal filed grievance appeals to the Office of the Secretary. This is essentially a legal question as to whether the readily acknowledged grievance appeals constitute exhaustion for purposes of this litigation.

By definition, a grievance is "[a] written complaint or petition, either informal or formal, by an inmate concerning an incident or condition within an institution, facility, or the Department which affects the inmate complainant personally." FLA. ADMIN. CODE R. 33-103.002(6) (2012). Rule 33-103.001(a) describes the purpose of the grievance process:

> The purpose of the grievance procedure is to provide an inmate with a channel for the administrative settlement of a grievance. In addition to providing the inmate with the opportunity of having a grievance heard and considered, this procedure will assist the department by providing additional means for internal resolution of problems and improving lines of communication. This procedure will also provide a written record in the event of subsequent judicial or administrative review.

FLA. ADMIN. CODE R. 33-103.001(a).

In Strong v. David, 297 F.3d 646 (7th Cir. 2002), the Seventh Circuit noted that prisoners must file grievances in the manner directed by the state's grievance rules. Strong, 297 F.3d at 649. Different prison systems will have different rules, with some requiring "fact-pleading in litigation," and others might require "the old code-pleading system under which the complaint must identify each 'element' of a 'cause of action.' " 297 F.2d at 649 (citing Bartholet v. Reishauer A.G. (Zurich), 953 F.2d 1073 (7th Cir. 1992)). Florida's system, like that of Illinois, does not appear to have a rule or regulation "which prescribes the contents of a grievance or the necessary degree of factual particularity." Strong, 297 F.3d at 650. Defendants have not pointed to such a rule.[5] Thus, "[w]hen the administrative rulebook is silent, a grievance suffices if it alerts

---

[5] The rules for submitting an appeal or direct grievance require only that the inmate fill out the identifying data at the top of the form, "state his grievance in Part A," and sign and date the form. FLA. ADMIN. CODE R. 33-103.007(2)(a)-(c). The rule does not address the substance of the grievance other than to require the grievance to be legible, clearly stated, accurately state the included facts, and "address only one issue or

the prison to the nature of the wrong for which redress is sought." *Id.* Put another way, there is no rule which requires an inmate to articulate legal theories. The Seventh Circuit held:

> As in a notice-pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming. Strong's two grievances were comprehensible and contained everything that Illinois instructed him to include. Defendants can't complain that he failed to do more.

297 F.3d at 650; *see also* Hall v. Leavins, No. 3:06CV351/RV/EMT, 2009 WL 563877, at *5 (N.D. Fla. Mar. 4, 2009) (quoting Strong and concluding the prisoner exhausted administrative remedies); Muhammad v. Crosby, No. 405CV193 WS, 2007 WL 2376050, at *3 (N.D. Fla. Aug. 16, 2007) (quoting Strong for the proposition "that § 1997e(a) requires prisoners 'to exhaust a process and not a remedy.' ").

Here, Mr. Espinal submitted a grievance which explained the substance of his grievance. Mr. Espinal complained about having been kept in confinement, negligence by staff, and the attack by another inmate. It is true, as argued by Defendants, that Mr. Espinal did not articulate facts specifically claiming that he previously "told the officers that there was a problem between [himself] and his cell mate." Doc. 75 at 11. However, the rules do not require a grievance to contain the elements of a legal theory. Such facts are necessary to demonstrate a "failure to protect" claim under the Eighth Amendment, but those facts are not necessary to exhaust administrative remedies.

In general, the exhaustion requirement serves two main purposes. It "gives an agency 'an opportunity to correct its own mistakes with respect to the programs it

---

complaint." FLA. ADMIN. CODE R. 33-103.007(2)(d)-(f).

administers before it is haled into federal court,' and it discourages 'disregard of [the agency's] procedures.' " Woodford, 548 U.S. at 89, 126 S. Ct. at 2385. "Second, exhaustion promotes efficiency." 548 U.S. at 89, 126 S. Ct. at 2385. Mr. Espinal's grievance appeals were sufficient for the Department to investigate the attack, consider the argument that Mr. Espinal should not have been housed in confinement with a "DC status" inmate, and evaluate the actions of the officers who rendered assistance after and during the attack. The purpose of exhaustion was fulfilled. The argument that this case should be dismissed on the basis of exhaustion should be denied.

### III. The relevant Rule 56(e) evidence

On December 31, 2012, Officer Hodge was working with Officer Young, assisting with showers in Y dormitory, the disciplinary confinement area at Jefferson Correctional Institution. Doc. 75, Ex. A-2 (Hodge declaration). Officer Hodge had only been a correctional officer for four months at the time of this incident. *Id.* Officer Hodge was "not responsible for cell assignments." *Id.*

Officer Young was not assigned to Y-dorm, but was assisting with showers in that dormitory on December 31, 2012. Doc. 75, Ex. A-1 (Young declaration). Officers Hodge and Young directed Mr. Espinal to come forward to be placed in cuffs, and inmate Mosqueda was directed to the back of the cell. *Id.* at 2. After Mr. Espinal was handcuffed, he was directed to go to the back of the cell, and inmate Mosqueda was directed to come to the front of the cell. *Id.* As Mr. Espinal moved toward the back of the cell, inmate Mosqueda jumped on Plaintiff's back. *Id.* He had one arm around Mr. Espinal's neck and "was moving the other arm." *Id.* Officers Hodge and Young called for the cell door to be opened. *Id.* The door was opened and the officers

"entered the cell and separated both inmates."  *Id.*  Inmate Mosqueda "had a razor blade in his right hand, which was confiscated and removed from the cell."  *Id.*  Mr. Espinal was taken "to the triage room in Y-dorm to be treated by medical."  *Id.*  Mr. Espinal's "injures appear[ed] to be superficial."  Doc. 75, Ex. A-4 at 2 (Britt declaration).  The medical record reveals that all lacerations were cleansed and "steristrips" were applied.  Doc. 75, Ex. B (doc. 75-2 at 1).  There is no indication that sutures were required to close any wound.  *Id.* at 1-2.

Officer Rivera was working as the "primary officer" on December 31, 2012.  Doc. 75-3 at 1 (Rivera declaration).  Officer Rivera was also assisting with showers at the time of the incident and was present at the time of these events.  *Id.* at 1-2.  Officer Rivera states:

> I did not abandon my position nor did I respond to assist the officers in an unreasonable amount of time.  When I heard the officers asking for help, as soon as I was able to check to see if conditions were appropriate for the cell door to be opened, the door was opened.

*Id.* at 2.  Officer Rivera further declares: "I did not strike, slap, kick, or hit [Mr. Espinal] when the two inmates were separated."  *Id.*  Additionally, Sergeant Britt "did not witness" Sergeant Rivera "slap, kick, or hit" Mr. Espinal.  Doc. 75, Ex. A-4 at 2 (Britt declaration).

Sergeant Britt was supervisor of the confinement unit on the night in question. *Id.* at 1 (Britt declaration).  He declares that he was unaware that Mr. Espinal "had been approved for closed management, and was no longer on disciplinary confinement status."  *Id.* at 2.  Sergeant Britt states that he did not fail to "assist the officers in an unreasonable amount of time."  *Id.*  He advises that when he heard the "officers asking

for help, [he] responded immediately." *Id.* Sergeant Britt also states that Sergeant Rivera "did not abandon his position that night . . . ." *Id.*

Officer Young states: "I was never made aware by Plaintiff that there was any inappropriate contact between Plaintiff and his cell mate, inmate Mosqueda, prior to the incident that occurred on December 31, 2012." Doc. 75, Ex. A-1 at 1 (Young declaration). Officer Young further states that Mr. Espinal never asked to be removed from his cell, never advised that he previously had been in a fight with inmate Mosqueda, and did not report that "inmate Mosqueda was taking his food or threatening to kill him." *Id.* at 1-2.

Likewise, Officer Hodge states that Mr. Espinal never asked to be removed from his cell, never told him about a prior fight with inmate Mosqueda, never said inmate Mosqueda had threatened to kill him, and never said inmate Mosqueda was taking his food. Doc. 75, Ex. A-2 at 2 (Hodge declaration). Similarly, Sergeant Britt advises that Mr. Espinal never asked to be removed from his cell, never told him about the fight with inmate Mosqueda, never reported that he was taking his food, and "at no time advised [Sergeant Britt] that he was afraid of his cellmate or that [he] was a threat to him." Doc. 75, Ex. A-4 at 2 (Britt declaration). "In fact, Inmate Espinal and Mosqueda appeared to be very friendly while house[d] together." *Id.*

Officer Rivera also declares that prior to the incident on December 31, 2012, Mr. Espinal never advised about a prior fight with inmate Mosqueda, never said he had threatened him, or had taken his food. Doc. 75, Ex. A-3 at 1-2 (Rivera declaration). Officer Rivera also states that not only had Mr. Espinal never asked to be removed from the cell he shared with inmate Mosqueda, "at one point [Mr. Espinal] asked to be placed

in the same cell with Hugo Mosqueda, and the two appeared to be friends." *Id.* at 2. Officer Rivera asserts that "[t]hey associated together around the compound." *Id.*

As additional evidence, the declaration of Michelle Partin, a senior classification officer, was submitted. Doc. 75, Ex. C (doc. 73-3). She reviewed Mr. Espinal's file and advises it "does not contain a no contact order between [Mr. Espinal] and inmate Hugo Mosqueda." *Id.* "There is no indication that the file ever contained such an order." *Id.* Officer Partin states that although the file indicates a fight had occurred between inmate Mosqueda and Mr. Espinal on July 9, 2012, "the two inmates were not special reviewed against each other based on the fight." *Id.* "There is not a procedure in place that specifically states not to house two inmates together based on a single incident." *Id.* at 1-2.

Mr. Espinal provided a copy of the disciplinary report which was written after the July 9, 2012, fight. Doc. 95, Ex. A at 1 (doc. 95-1). The fight occurred at the center gate, and both Mr. Espinal and inmate Mosqueda complied with verbal orders to cease. *Id.* Mr. Espinal was found guilty and placed in disciplinary confinement for 60 days. *Id.* at 2.

Mr. Espinal also submitted an affidavit in support of his claims. Doc. 95, Ex. D (doc. 95-1 at 23-25). His affidavit is sworn under penalty of perjury. *Id.* at 25. Mr. Espinal was placed in Y dormitory on October 5, 2012,[6] after having been found guilty of two disciplinary reports. *Id.* at 23. He advises that on October 30, 2012, he

---

[6] It appears that he was placed in confinement on October 5, 2012, when the disciplinary reports were issued pending investigation. He was sentenced on October 30, 2012, and, thus, would remain in confinement.

Case No. 4:13cv116-RH/CAS

was sentenced to a total of 60 days in disciplinary confinement.  *Id.*  He contends he should have been released on December 28, 2012.[7]  *Id.*

Mr. Espinal states that he was approved for close management but his cell mate was not in close management status.  *Id.* at 23.  Mr. Espinal says that inmate Mosquedo was placed in his cell on October 16, 2012.  *Id.*  Mr. Espinal declares that "since the day" inmate Mosquedo was placed in his cell, he notified Officer Young, Sergeant Britt, and Officer Rivera that his life was in danger.  *Id.*  Mr. Espinal said the reason his life was in danger was because inmate Mosquedo "was beating me and taking my food and" threatening to kill him.  *Id.*  Mr. Espinal further declares that he notified Officer Young, Sergeant Britt, and Officer Rivera that he and inmate Mosquedo had an "order of restriction of no contact from a previous fight . . . ."  *Id.*

Furthermore, Mr. Espinal states in his affidavit that on December 31, 2012, Officers Hodge and Young came by his cell "doing their routine security check at 7:15 p.m."  *Id.* at 24.  Mr. Espinal says that when they passed by, he told them that his cell mate was threatening to kill him.  *Id.*  Mr. Espinal states that he "pleaded with them to" take him out of the cell, but "they only made fun" of him.  *Id.*

Mr. Espinal states in his affidavit that on December 31, 2012, Officer Rivera and Sergeant Britt also came by his cell.  *Id.* at 24.  Mr. Espinal says that he also notified them that his cell mate was continuing to threaten to kill him and was continuing "to abuse" him.  *Id.*

When Officers Young and Hodge came to take he and inmate Mosquedo to the shower, inmate Mosquedo "produced a blade out of his mouth and starting" cutting him.

---

[7] The Court's calculation of 60 days would end on December 29, 2012.

*Id.* Mr. Espinal states that he was slammed on the ground and inmate Mosquedo started to choke him while Mr. Espinal was in handcuffs behind his back. *Id.* Officers Young and Hodge began to scream for Officer Rivera to open the cell door. *Id.* Mr. Espinal complains that Officers Young and Hodge had pepper spray in their possession but did not use it to stop the attack. *Id.* Mr. Espinal also complains that when Officer Rivera arrived at his cell, he kicked him and slammed his face "without any reason." *Id.* Mr. Espinal contends that he notified Officer Rivera "the same night of the incident that" his cell mate was threatening to kill him. *Id.*

Mr. Espinal contends that if Officer Rivera had not left his position, the attack would not have lasted as long as it did. Doc. 95-1 at 25. Mr. Espinal does not, however, explain how he was in a position to see the control panel and observe whether or not Officer Rivera was at his position.

## IV. Analysis

The Eighth Amendment "imposes upon prison officials the duty to 'provide humane conditions of confinement.' " Farmer v. Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970, 1976, 128 L. Ed. 2d 811 (1994). Prison officials are required to "ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.' " Farmer, 511 U.S. at 832, 114 S. Ct. at 1976 (quoting Hudson v. Palmer, 468 U.S. 517, 526- 527, 104 S. Ct. 3194, 3200, 82 L. Ed. 2d 393 (1984)). In guaranteeing their safety, officials must "protect prisoners from violence at the hands of other prisoners." Farmer, 511 U.S. at 833, 114 S. Ct. at 1976-1977 (citing Cortes-Quinones v. Jimenez-Nettleship, 842 F.2d 556, 558 (1st Cir.), *cert. denied*, 488 U.S. 823 (1988)). However, not "every injury

suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." Farmer, 511 U.S. at 834, 114 S. Ct. at 1977.

To prevail on an Eighth Amendment failure-to-protect claim, an inmate must make two showings. First, he must demonstrate that he was "incarcerated under conditions posing a substantial risk of serious harm." Farmer, 511 U.S. at 834, 114 S. Ct. at 1977 (citing Helling v. McKinney, 509 U.S. 25, 35, 113 S. Ct. 2475, 2481, 125 L. Ed. 2d 22 (1993)). Second, he must show that the defendant prison official had a "culpable state of mind" (be deliberately indifferent) in that he knew of and disregarded "an excessive risk to inmate health or safety." 511 U.S. at 834, 837, 114 S. Ct. at 1977, 1979. In other words, a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837, 114 S. Ct. at 1979.

The "deliberate indifference" standard "entails something more than mere negligence," but "is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Id. at 835, 114 S. Ct. at 1978. In addition, the Court explicitly rejected the invitation to utilize a completely objective test, requiring an "inquiry into a prison official's state of mind." Id. at 837-38, 114 S. Ct. at 1979. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." Id. "Merely negligent failure to protect an inmate from attack does not justify liability under [§] 1983." Goodman v. Kimbrough, 718 F.3d 1325, 1332 (11th Cir. 2013) (quoting Brown v. Hughes, 894 F.2d 1533, 1537

(11th Cir.1990) (per curiam)).  It must be acknowledge that "[t]he Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.' " Farmer, 511 U.S. at 837, 114 S. Ct. at 1979.

In this case, Mr. Espinal has created a genuine dispute of material fact. Mr. Espinal states in his affidavit that he advised all four Defendants that his life was in danger because his cell mate, Hugo Mosqueda, was threatening him.  If those assertions are true, a reasonable jury could conclude that it was deliberate indifference to not separate Mr. Espinal from inmate Mosqueda.  The motion for summary judgment should be denied on the basis that there is sufficient evidence to establish an Eighth Amendment violation and a jury should decide whether Defendants failed to protect Mr. Espinal.

## V.     Qualified Immunity

Defendants raise qualified immunity as a defense.  Doc. 75 at 16.  "Qualified immunity offers complete protection for individual public officials performing discretionary functions insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Jay v. Hendershott, 579 F. App'x 948, 950 (11th Cir. 2014) (citations omitted).  It is not contested that Defendants were acting within their discretionary authority.  Furthermore, there is a genuine dispute of the material facts concerning whether Defendants failed to protect Mr. Espinal.  It is recommended that the claim proceed to trial.  Implicit in that recommendation is the determination that Mr. Espinal has come forward with evidence to support his claim and, thus, viewed in the light most favorable to Mr. Espinal, the Defendants' conduct violated clearly established rights.  It has been well established

since 1994 that prison officials have a "duty to protect prisoners from violence at the hands of other prisoners." Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099 (11th Cir. 2014) (quoting Farmer v. Brennan, 511 U.S. at 833, 114 S.Ct. at 1976); *see also* Cottone v. Jenne, 326 F.3d 1352, 1358-60 (11th Cir. 2003), Hale v. Tallapoosa Cnty., 50 F.3d 1579, 1584 (11th Cir. 1995), and LaMarca v. Turner, 995 F.2d 1526, 1536–38 (11th Cir. 1993). There is a question of fact to be determined as to whether Defendants had the requisite knowledge that Mr. Espinal faced a substantial risk of serious harm if he were left in the cell with inmate Mosqueda. However, at the summary judgment stage, Defendants have not shown they are entitled to qualified immunity.

## VI. Physical Injury

Finally, Defendants contend that pursuant to 42 U.S.C. § 1997e(e), Mr. Espinal cannot obtain compensatory damages absent physical injury. Doc. 75 at 18. Defendants contend that Mr. Espinal's injuries were only de minimis because his lacerations were mostly superficial. *Id.* at 20. Considering the posture of this case, the issue of Mr. Espinal's entitlement to such damages should be decided another day. The request to grant summary judgment on this request for relief should be denied.

## Recommendation

In light of the foregoing, it is respectfully **RECOMMENDED** that Plaintiff's motion for summary judgment, doc. 73, be **DENIED** because it is insufficient under Rule 56 and Local Rule 56.1, that Defendants' motion for summary judgment, doc. 75, be **DENIED** because there is a genuine dispute of material fact, and this case be **REMANDED** for further proceedings prior to setting the case for trial.

**IN CHAMBERS** at Tallahassee, Florida, on August 19, 2015.

       S/    Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.